2011 OK JUD ETH 3

**JUDICIAL ETHICS OPINION 2011–3.**

No. 2011–3.

Oklahoma Judicial Ethics Advisory Panel.

July 6, 2011.

-----

JUDICIAL ETHICS ADVISORY PANEL

¶ 1 Questions: 1. May a Judge hold an internet social account, such as Facebook, Twitter, or Linkedin without violating the Code of Judicial Conduct?

¶ 2 2. May a Judge who owns an internet based social media account add court staff, law enforcement officers, social workers, attorneys and others who may appear in his or her court as "friends" on the account?

¶ 3 Answers: Question 1—Yes, with restrictions.

¶ 4 Question 2—No.

¶ 5 Discussion: The explosion in the use of social networking accounts has resulted in inquiries, such as we address in this opinion to Judicial Ethics Advisory Panels in several states, and the use of such accounts resulted in sanctions being imposed for improper use in some instances. We have reviewed opinions from New York, Florida, South Carolina, Kentucky and Ohio and reports of dis-

ciplinary actions in North Carolina and Georgia.

■ ¶ 6 The common theme of the opinions rendered in other states deals with the conflict that may arise between the use of the social network and the duty of the Judge, found in all the Codes of Judicial Conduct, that is the duty of the Judge to maintain the dignity of judicial office at all times, and avoid impropriety and the appearance of impropriety in their professional and personal lives, and to ensure the greatest public confidence in their independence, impartiality, integrity and competence. See Preamble of Oklahoma Code of Judicial Conduct (2), Canon 1, Rule 1, 2, etc. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the Judge violated this code or engaged in other conduct that reflects adversely on the Judge's honesty, *impartiality,* temperament, or fitness to serve as a Judge. Canon 1, Rule 214(C), "A Judge shall not convey or permit others to convey the impression that any person or organization is in a position to influence the Judge."

■ ¶ 7 All of the Ethics Panels have opined that there is no per se violation of their respective Codes but differ as to whether the Judge can add as "friends" lawyers or others who regularly appear or are likely to appear in their court. We conclude that in answer to Question 1 that a Judge may hold a social networking account that includes as "friends" any person who does not regularly appear or in unlikely to appear in the Judge's court as long as he does not use the network in a manner that would otherwise violate the Code of Judicial Conduct. New York, South Carolina, Kentucky, and Ohio have concluded that it is not per se a violation to have as a "friend" on Facebook, lawyers who appear before the Judge or those persons such as law enforcement officers, social workers who may appear before the court but restrict any such conduct that could publicly be perceived as indicating that such persons may exercise undue influence on the Judge as regarded as ex-parte communications. The Kentucky opinion JE 119 states that they do not believe that being a designated friend in a social network conveys the impression of a special relationship, the opinion is shared by panels from New York, South Carolina, and Ohio and a minority opinion from Florida. The Kentucky opinion repeats the admonition New York Advisory Opinion 08–176 that "social networking sites are fraught with peril for Judges." We agree wholeheartedly with the admonition.

■ ¶ 8 Florida's Judicial Ethics Advisory Opinion 2009–20 prohibits a Judge from adding lawyers who appear in the Judge's court as "friends" and prohibits these lawyers from adding the Judge a "friend" as being violative of the canon that prohibits a Judge from conveying an impression, or allow others to convey the impression, that a person is in a special position to influence the Judge. We agreed and emphasize that whether such posting would mean that the party was actually in a special position is immaterial as it would or could convey that impression. We believe that the same rationale applies to social workers, law enforcement officers, or others who regularly appear in court in an adversarial role. In response to our specific question, we ,do not believe that this extends to court staff.

¶ 9 We believe that public trust in the impartiality and fairness of the judicial system is so important that is imperative to err on the side of caution where the situation is "fraught with peril."

¶ 10 To those who would argue that this position is too restrictive of the rights and privileges of the Judge, we echo the Kentucky opinion JE 119, wherein it is stated "A Judge must accept restrictions on the Judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

/s/ Milton C. Craig, Chairman

/s/ Robert E. Lavender, Vice–Chairman

/s/ Vicki L. Robertson, Secretary